UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JEFFREY BEANEY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|         v. | )  2:16-cv-00544-JDL |
| | ) |
| UNIVERSITY OF MAINE | ) |
| SYSTEM, et al., | ) |
| | ) |
|     Defendants. | ) |

**ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Jeffrey Beaney filed suit in the Maine Superior Court against the Defendants—the University of Maine System, James Page (the University System's Chancellor), and David Flanagan (formerly the President of the University of Southern Maine). ECF No. 1-9. Beaney was previously employed as a hockey coach and lecturer at the University of Southern Maine, and his Complaint arises out of events leading to the termination of his employment in January 2015. Beaney asserts claims for deprivation of due process under 42 U.S.C.A. § 1983 (2016), defamation, intentional misrepresentation, negligent misrepresentation, and intentional infliction of emotional distress. *Id.* at 5-9. The Defendants removed the suit to federal court, ECF No. 1, and now move for judgment on the pleadings on the § 1983 and defamation claims, pursuant to Federal Rule of Civil Procedure 12(c),[1] ECF No. 7.

---

[1] Although Defendants' motion is styled as a motion to dismiss, they filed an answer to the Complaint in state court, before removing the case. ECF No. 1-10. Their motion is therefore properly treated as one for a judgment on the pleadings under Rule 12(c). *See Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54 (1st Cir. 2006).

## I. FACTUAL BACKGROUND

The facts as set forth in the Complaint,[2] which are largely denied by the Defendants, are as follows. Beaney was employed by the University for approximately thirty years, from 1985 until January 2, 2015. From 2004 until his employment ended in 2015, Beaney worked as a full-time hockey coach and lecturer. In November 2014, the University received an anonymous letter containing accusations of inappropriate behavior by the hockey team's coaching staff, in violation of the school's sexual harassment policies. University officials allegedly told Beaney that an independent investigation had revealed or was about to reveal that he was personally responsible for the conduct alleged in the letter. Beaney denies engaging in or allowing any inappropriate behavior.

Agents of the University allegedly threatened to terminate Beaney's employment for cause on the basis of the allegations if he did not retire. Beaney was told that his termination for cause would result in the loss of his health, retirement, and other benefits, including a tuition waiver for his son. On December 29, 2014, President Flanagan allegedly declared that Beaney's employment would be terminated immediately unless he retired instead. Beaney further alleges that University agents falsely represented the nature of the benefits he would receive if he agreed to retire. Beaney agreed to retire, effective January 2, 2015. After he retired, he did not receive the benefits he was promised, and his son's tuition waiver

---

[2] Beaney filed an Amended Complaint in state court before the case was removed to federal court. *See* ECF No. 1-9. For simplicity's sake, the Amended Complaint is referred to in this decision as "the Complaint."

was revoked. An independent investigation later determined that there was no basis for any of the accusations purportedly contained in the anonymous letter.

## II. DISCUSSION

### A. Legal Standard

Motions under Rule 12(c) are treated nearly the same as motions to dismiss under Rule 12(b)(6), with the "modest difference" that Rule 12(c) motions implicate the pleadings as a whole. *See Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006). Thus, I must view the facts in the light most favorable to the Plaintiff, and draw all inferences in his favor. *Id.* at 54. I am not tasked with resolving factual disputes at this stage; I may enter judgment on the pleadings "only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Id.*

In order to survive a Rule 12(c) motion, as with a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Bovin Belskis v. DT Developers Inc.*, 2016 WL 5395833, at *10 (D. Me. Sept. 27, 2016); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B. Section 1983 Claim

Defendants contend that they are entitled to judgment on Count One of the Complaint, which alleges deprivation of due process in violation of 42 U.S.C.A. § 1983.

ECF No. 7 at 5-12. The Defendants assert five[3] separate arguments in support of this contention: (1) the University has sovereign immunity from § 1983 liability; (2) Beaney's suit is precluded by his failure to avail himself of internal grievance procedures; (3) Beaney has not sufficiently alleged personal liability on the part of Defendants Flanagan and Page; (4) Beaney had no constitutionally-protected property interest in his continued employment; and (5) Flanagan and Page are entitled to qualified immunity.

### 1. The University's Sovereign Immunity

Defendants assert that the University of Maine System is immune from suit under § 1983 because it is an arm of the state. ECF No. 7 at 5-6. Beaney argues that the University waived its immunity by removing the case to federal court, and asserts that there is not enough information in the record to determine whether the University qualifies as an arm of the state for purposes of § 1983. ECF No. 11 at 4.

Removing a suit from state to federal court does not result in a waiver of sovereign immunity if the same immunity is available to the removing party in state court. *See Bergemann v. RI Dep't of Envtl. Mgmt.*, 665 F.3d 336, 342 (1st Cir. 2011). If, however, a party is not immune from suit in state court, then removing the case to federal court may constitute a waiver of immunity. *See Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002). In *Lapides*, the Court held that the University of Georgia had waived its immunity by removing a case to federal court, where the state had explicitly waived immunity in state court. *Id.* at 616-17, 624.

---

[3] Defendants also argued in their motion that Defendants Flanagan and Page could not be sued in their official capacities. ECF No. 7 at 9-10. Plaintiff confirmed at oral argument, however, that he is not suing either Flanagan or Page in his official capacity.

4

The Court reasoned that "seriously unfair results" would result from a rule that permitted a state to invoke federal jurisdiction through removal, but then claim that the federal court lacked jurisdiction over the suit due to Eleventh Amendment immunity. *See id.* at 619.

The First Circuit discussed *Lapides* at length in its decision in *Bergemann*, 665 F.3d at 340-41. In that decision, the First Circuit held that Rhode Island had not waived its immunity by removing the case to federal court because the state would also have been immune in the state court where the suit was originally filed. *Id.* at 342. Noting that the waiver by conduct doctrine is animated by a "desire to avoid unfairness," the court reasoned that there was "nothing unfair" about allowing Rhode Island to assert its immunity after removal because that immunity was equally robust in both state and federal court. *Id.* at 341-42. By contrast, allowing a party to assert immunity in federal court after removing a case from a state court where it did not have immunity would create the sort of unfair result discussed in both *Lapides* and *Bergemann*. Accordingly, the question of whether the University can assert sovereign immunity in this case, after having removed it to federal court, turns on whether the University would have been immune from suit in the Maine state court where the case was originally filed.[4]

The Maine Law Court has developed a two-part test for determining whether a state agency is entitled to immunity under § 1983. *See Campaign for Sensible*

---

[4] Defendants rely on *Lockridge v. Univ. of Me. Sys.*, 2009 WL 1106529, at *21 (D. Me. Apr. 23, 2009) *adopted at* 2009 WL 1585771 (D. Me. Jun. 4, 2009) to argue that the University is immune in federal court. ECF No. 7 at 5. However, *Lockridge* does not answer the question presented in this case, as it is silent as to both the University's immunity in state court and the effect of removal to federal court.

*Transp. v. Me. Tpk. Auth.*, 658 A.2d 213, 216-17 (Me. 1995). Courts must determine: "(1) [I]s the agency an alter ego of the state or is it relatively autonomous, and (2) would funds to pay a judgment against the agency come from the state treasury." *Id.* (footnote omitted). The pleadings in this case do not provide enough information to determine whether the University qualifies for immunity under this test. The pleadings alone offer no information regarding the governance of the University that might shed light on whether it is an autonomous organization, or the sources of funding that would be used to pay a judgment against it. Thus, it is premature to determine whether the University would have been entitled to immunity in state court, and, consequently, whether it waived immunity by removing the case to federal court. Accordingly, at this early juncture, the University has not shown that it is entitled to a judgment in its favor based on sovereign immunity.

### 2. Internal Grievance Procedure

Defendants argue that Beaney is precluded from bringing a due process claim because he failed to take advantage of the internal grievance procedures that are available to University employees. ECF No. 7 at 8-9. They argue that Beaney cannot intentionally forego the process that was available to him, and then claim that he was deprived of due process. *Id.* at 9.

"In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). The Defendants point to the University's *Handbook for Non-represented Faculty and Salaried Staff* ("the *Handbook*") to demonstrate that there

6

were internal grievance processes that Beaney declined to pursue following the termination of his employment. ECF No. 7 at 8. Beaney argues that the *Handbook* is not properly before the Court at this stage in the proceedings, but even if it were, it does not necessarily apply to him. ECF No. 11 at 5-6.

In deciding a motion under Rule 12(c), a court can consider a document outside of the pleadings if the allegations in the complaint are expressly linked to and admittedly dependent upon the document. *Beddall v. State St. Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (referring to Rule 12(b)(6)). Mere relevance to the factual allegations in the complaint is not enough. *Pimpiano v. Cent. Me. Power Co.*, 221 F. Supp. 2d 6, 10 (D. Me. 2002) ("However 'germane' the documents may be, that is not the test applied by this court.").

Defendants rely on *Goodman v. President and Trustees of Bowdoin Coll.*, 135 F. Supp. 2d 40 (D. Me. 2001), in claiming that the *Handbook* should be considered. ECF No. 7 at 3, n.4. In *Goodman*, the court considered a similar student handbook in ruling on a motion to dismiss a claim for breach of contract brought by a student against a college. *Id.* at 46-47. The court determined that the handbook in that case was central to the student's allegation that a contractual relationship existed between the student and the college. *Id.* at 47. The student agreed that it was central to his contract claim, and he did not oppose the consideration of the handbook, which had been submitted by the college. *Id.* at 46. The handbook was explicitly referenced in the plaintiff's complaint. *Id.* at 45.

Here, in contrast, Beaney opposes the Court's consideration of the *Handbook*, arguing that the only indication the *Handbook* may be relevant to his claims "is

7

Defendants' own say-so." ECF No. 11 at 5; *see also Knowlton v. Shaw*, 708 F. Supp. 2d 69, 75 (D. Me. 2010) (noting that if parties dispute document's relevance, then the issue is better reserved for summary judgment stage). Furthermore, the *Handbook* is not referenced in Beaney's Complaint. *See Goodman*, 135 F. Supp. 2d at 47 ("In order for a document to be incorporated into the pleadings, the Court must find that the document is 'referred to in the plaintiff's complaint and . . . central to [a] claim.'") (quoting *Beddall*, 137 F.3d at 17).

The *Handbook* is also not central to Beaney's claims. *See Beddall*, 137 F.3d at 17. Unlike the plaintiff in *Goodman*, who asserted that the defendants had breached a contract defined by the student handbook, *see* 135 F. Supp. 2d at 45, Beaney asserts a deprivation of due process claim under § 1983 that is not explicitly dependent on the terms of the *Handbook*. In fact, based on the pleadings, it is not possible to determine whether the *Handbook* controlled any of the terms of Beaney's employment.

Because the *Handbook* is neither referenced in Beaney's Complaint nor central to his claims, it is not properly before the Court at this stage in the proceedings. The pleadings alone do not establish what internal procedures may have been available to Beaney, or indicate whether those procedures were effectively "unavailable or patently inadequate." *See Suzuki*, 227 F.3d at 116. Accordingly, Defendants are not entitled to judgment based on Beaney's alleged failure to exhaust the University's internal grievance procedures.

8

### 3. Personal Liability of Flanagan and Page

The Defendants argue that the Complaint does not sufficiently allege a basis for personal liability on the part of Flanagan and Page. ECF No. 7 at 10-11. They assert that Beaney has failed to allege facts demonstrating that Flanagan or Page had any personal involvement in the alleged deprivation of his constitutional rights. *Id.* Beaney counters that he has adequately alleged a basis for supervisory liability on the part of Flanagan and Page, asserting that supervisors may be held liable for the actions of their subordinates even if they do not personally interact with a plaintiff. ECF No. 11 at 8.

"*Respondeat superior* or vicarious liability will not attach under § 1983." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 123 (1992) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). Similarly, a person cannot be liable under § 1983 solely by virtue of their position of authority. *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016). Supervisory liability may attach, however, where a plaintiff shows that one of the supervisor's subordinates abridged the plaintiff's constitutional rights, and that the supervisor's action or inaction was affirmatively linked to that behavior so that it can be characterized as encouragement, condonation, acquiescence, or deliberate indifference. *Id.* at 514-515. While a supervisor need not directly engage in unconstitutional behavior, the supervisor's liability must be premised on his or her own acts or omissions. *Id.* at 515.

In order to survive a motion under Rule 12(c), a complaint must allege sufficient facts to state a plausible claim for relief. *See In re Ariad Pharm., Inc. Sec.*

9

*Litig.*, 842 F.3d 744, 756 (1st Cir. 2016). Here, the Complaint states that "Defendants' agents" told Plaintiff that they had reason to believe that he was responsible for the conduct alleged in the anonymous letter, and that they coerced him into resigning in order to avoid termination for cause and the attendant loss of benefits. ECF No. 1-9 at 3-4. It further states that "[o]n or about December 29, 2014, Defendant Flanagan declared that Plaintiff's employment would be terminated immediately unless he elected to 'retire' instead." *Id.* at 4, ¶ 6 [sic]. Accepting these allegations as true and drawing all inferences in the Plaintiff's favor, as I must at this stage, I find that Beaney has alleged sufficient facts to plausibly infer supervisory liability on the part of Flanagan. His personal involvement in the termination process, as evidenced by his statement, may establish his "encouragement, condonation, or acquiescence" in the asserted constitutional violation carried out by his subordinates. *See Guadalupe-Báez*, 819 F.3d at 515; *see also Lipsett v. Univ. of P.R.*, 864 F.2d 881, 907 (1st Cir. 1988) (finding inference of supervisory liability reasonable where supervisors were aware of, but did nothing to correct, unconstitutional behavior by subordinates).

The Complaint does not, however, allege any facts suggesting that Page played a role in the alleged deprivation of Beaney's constitutional rights. The only mention of Page in the Complaint is the statement that he is the Chancellor of the University. *See* ECF No. 1-9 at 2, ¶ 3. As mentioned above, supervisory liability must be premised on a defendant's own acts or omissions, and not simply upon that person's position of authority. *See Guadalupe-Báez*, 819 F.3d at 515. The Complaint does not specifically allege that Page was involved in, or indeed even aware of, the incidents leading to Beaney's allegedly coerced retirement. Nor is there a basis on which to infer a causal

connection between Page's acts or omissions and the constitutional violation alleged. *See Ramírez-Lluveras v. Rivera-Merced*, 759 F.3d 10, 19 (1st Cir. 2014) ("[W]e have stressed the importance of showing a strong causal connection between the supervisor's conduct and the constitutional violation."). The Complaint therefore fails to allege sufficient facts to support a plausible inference of supervisory liability on the part of Page. *See Pineda v. Toomey*, 533 F.3d 50, 54-55 (1st Cir. 2008) (finding no supervisory liability on part of police sergeants for constitutional violation occurring within their district where defendants' conduct played no role in alleged constitutional violation).

Accordingly, Page is entitled to judgment with respect to the § 1983 claim asserted against him.

### 4. Beaney's Property Interest in Employment

Defendants also assert that Beaney cannot sustain a claim under § 1983 because he has not pleaded sufficient facts to demonstrate that he had a property interest in his continued employment. ECF No. 7 at 7-8. Defendants claim that Beaney was an at-will employee and the University was free to terminate him without providing any process. *Id.* Defendants point to the *Handbook* as evidence that Beaney was an at-will employee. *Id.* Beaney argues that the terms and circumstances of his employment gave rise to an implied contract, and therefore he had a constitutionally-protected interest in his continued employment. ECF No. 11 at 6-7.

At-will employees do not have a protected interest in continued employment that would give rise to an entitlement to due process protections. *Ayala-Rodríguez v.*

11

*Rullan*, 511 F.3d 232, 238 (1st Cir. 2007). Accordingly, if Beaney was an at-will employee, he does not have a viable claim under § 1983. As discussed above, however, the *Handbook* is not properly before the Court at this stage of the proceedings, so it cannot be used to establish that Beaney was an at-will employee. The viability of his claim therefore turns on whether Beaney has sufficiently pleaded the existence of a protected interest in his continued employment.

An employer's words and conduct, as well as rules and understandings promulgated or fostered by an employer, may give rise to a protected property interest in a public employee's continued employment, even absent an express contract. *Perry v. Sindermann*, 408 U.S. 593, 602-03 (1972). Beaney contends that he has sufficiently pleaded a property interest in his continued employment. ECF No. 11 at 6. The Complaint alleges that Beaney was employed by the University from 1985 until 2015, and that "[t]he terms and circumstances of Plaintiff's employment were such that he had a protected property interest and/or a liberty interest in his continued employment at all relevant times." ECF No. 1-9 at 2, ¶¶ 6, 9.

In order to survive a motion under Rule 12(c), as with a motion under Rule 12(b)(6), "a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Ariad*, 842 F.3d at 756 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Allegations that simply parrot the relevant legal standard are to be disregarded as conclusory legal allegations, rather than allegations of fact. *Id.*; *see also Iqbal*, 556 U.S. at 681.

In *Ariad*, the First Circuit affirmed dismissal of a complaint alleging violations of the Securities Act. 842 F.3d at 757. The Securities Act allows plaintiffs to recover

12

for false or misleading statements made in connection with a stock offering, provided the plaintiffs can show that their securities are traceable to the public offering that was the subject of the false or misleading statement. *Id.* at 755. The complaint in *Ariad* generally alleged that the securities purchased by the plaintiffs were traceable to the specific stock offering at issue. *Id.* The court held that this general allegation was not sufficient to meet the pleading standard set out in *Twombly* and *Iqbal*. *Id.* at 756. Noting that "traceability is an element of a [Securities Act] claim," the court held that "a general allegation that a plaintiff's shares are traceable to the offering in question is nothing more than a 'formulaic recitation' of that element." *Id.* (quoting *Twombly*, 550 U.S. at 555). Because the complaint did not set forth sufficient facts to plausibly suggest that the plaintiffs' shares were issued in the specific offering, its dismissal was upheld. *Id.*

Beaney's assertion that the terms and conditions of his employment were such that they gave rise to a protected interest is similar to the formulaic recitation considered in *Ariad*. The existence of a protected interest in his employment is an element of Beaney's claim of a deprivation of his due process rights, much like the traceability of the stock shares in *Ariad* was an element of the Securities Act claim. A general allegation that this protected interest existed asserts a legal conclusion, rather than a fact, and therefore is not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 681. In order to state a claim, the Complaint must allege facts, not merely legal conclusions, that plausibly suggest that Plaintiff had a protected interest in his continued employment. *See id.* at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (quotations omitted); *see*

*also Ariad*, 842 F.3d at 756. Beyond the length of his employment with the University, Beaney's Complaint does not contain any specific factual allegations regarding the "terms and conditions" of his employment that suggest that they gave rise to a protected interest. *See* ECF No. 1-9.

Because Beaney failed to sufficiently allege a constitutionally-protected interest in his continued employment, all of the Defendants are entitled to judgment on Count I of the Complaint.

### 5. Flanagan and Page's Qualified Immunity

Defendants also argue that Flanagan and Page are entitled to qualified immunity because Beaney has not sufficiently alleged the violation of a clearly established constitutional right. ECF No. 7 at 11-12. Beaney responds that existing caselaw makes it clear that he could not be deprived of his employment without due process. ECF No. 11 at 10-13.

Qualified immunity shields an official from money damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Alberti v. Carlo-Izquierdo*, 548 F. App'x 625, 637 (1st Cir. 2013) (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011)). Whether or not the Defendants can be said to have violated a clearly established right of Beaney's depends on how the right at issue is characterized. Employees do not have a clearly established right to due process before the termination of at-will employment, *see Alberti*, 548 F. App'x at 638, but do have a clearly established right to due process before the termination of an express or implied public employment contract, *see Cleveland Bd. of Educ. v. Loudermill*, 470

14

U.S. 532, 538 (1985). The question of whether Flanagan and Page are entitled to qualified immunity therefore turns on whether Beaney is able to demonstrate that he had a protected interest in his continued employment.

As discussed above, Beaney has not sufficiently alleged that he had a protected interest in his continued employment. Defendants Flanagan and Page are therefore entitled to qualified immunity from Beaney's § 1983 claim, and are entitled to judgment on that basis.

### 6. Conclusion

Based on the foregoing, the University, Page, and Flanagan are entitled to judgment on the pleadings as to Beaney's § 1983 claim because: (1) Beaney has not alleged sufficient facts to infer supervisory liability on the part of Defendant Page; (2) Beaney has failed to sufficiently allege a constitutionally-protected interest in his continued employment; and (3) Defendants Flanagan and Page are entitled to qualified immunity because Beaney has failed to sufficiently allege a protected interest in his continued employment.

### C.  Defamation Claim

Count Two of the Complaint alleges that the Defendants defamed Beaney by publishing false statements about his occupational and professional fitness. ECF No. 1-9 at 6. Defendants argue that this count must be dismissed because it is conclusory and not supported by sufficient facts. ECF No. 7 at 13-14. Specifically, Defendants claim that the Complaint does not identify who made the statements, what the content of the statements was, when they were made, or to whom they were communicated. *Id.* at 14. Beaney contends that the allegations in the Complaint are

sufficient to meet the pleading standard of Rule 8, that he has sufficiently alleged each element of a defamation claim, and that it is not necessary to include details regarding publication of the alleged defamatory statements. ECF No. 11 at 13-14.

Defamation claims are not subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), but "the pleadings in a defamation case need to be sufficiently detailed to the extent necessary to enable the defendant to respond." *Bishop v. Costa*, 495 F. Supp. 2d 139, 141 (D. Me. 2007). In order to enable a defendant to respond effectively to the complaint, courts "require plaintiffs to assert the substance of the allegedly defamatory statements and the context of the publication." *McDonald v. Verso Paper LLC*, 2015 WL 5993875, at *2 (D. Me. Oct. 14, 2015).

In *McDonald*, this Court held that a defamation claim was pleaded with sufficient detail to survive a motion to dismiss. *See id.* at *3. The complaint in that case alleged that the defendant published false statements in connection with the termination of the plaintiff's employment, including that "his employment was terminated for making threatening statements, failure to meet performance standards and/or for other purported reasons relating to his alleged lack of fitness for his position." *Id.* The Court found that this was enough to put the defendant on notice of the claim against him. *Id.*

The allegations in this case are similar to those considered in *McDonald*. Beaney alleges that "beginning in or about December 2014, Defendants published and forced Plaintiff to publish false statements defaming his occupational and professional fitness, including statements indicating that he was guilty of engaging

16

in, facilitating and/or condoning sexual harassment and/or similar misconduct while acting as a university hockey coach." ECF No. 1-9 at 6. The gist of the content of the alleged defamatory statements is apparent from the Complaint. *See McDonald*, 2015 WL 5993875, at *2.

Absent from Beaney's Complaint, however, is any information about the context of the publication of the statements. The Complaint does not identify which of the Defendants or their agents made the alleged statements, to whom the statements were allegedly made, the method of publication, or any information that provides insight as to when the statements were allegedly made, other than that the statements began in or about December 2014. *See* ECF No. 1-9 at 6; *cf. Hawkins v. Kiely*, 250 F.R.D. 73, 76 (D. Me. 2008). Accordingly, the Defendants are entitled to judgment on the pleadings as to Beaney's defamation claim.

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that Defendants' motion for judgment on the pleadings as to Beaney's § 1983 and defamation claims (ECF No. 7) is **GRANTED**.

**SO ORDERED.**

Dated this 28th day of February 2017

                                                    /s/ JON D. LEVY
                                                **U.S. DISTRICT JUDGE**